FILED ☑ _____ LODGED
RECEIVED _____ COPY

**MAR 30 2017**

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____DEPUTY

1  Judith M. Ockenfels, Pro Se
2  Mailing Address:
   PO Box 43183
3  Tucson, AZ 85733-3183
   (520) 203-1745
4

5

6            **UNITED STATES DISTRICT COURT**
                        for the
7              **DISTRICT OF ARIZONA**
                     PIMA COUNTY
8

9  JUDITH M. OCKENFELS,          )   **CV17-0140 TUCFRZ**
   on behalf of herself,         )
10                               )   Case No. _____
                    Plaintiff,   )
11                               )   **JURY TRIAL DEMANDED**
   v.                            )
12 CITIBANK, N.A.,               )
                                 )
13                  Defendant.   )
                                 )
14

15 **PLAINTIFF COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO:**

16 **I.  47 U.S.C. §227 *ET SEQ.* • TELEPHONE CONSUMER PROTECTION ACT *and***
   **15 U.S.C. § 6102-16 CFR  § 310 • ABUSIVE TELEMARKETING ACTS OR PRACTICES**
17 **II.  15 U.S.C. §1681 *ET SEQ.* • FAIR CREDIT REPORTING ACT**
   **III. NEGLIGENT DUTY OF CARE**
18 **IV. TORTIOUS INTERFERENCE AND LOSS OF OPPORTUNITY**
19

20                    **INTRODUCTION**

21 COMES NOW Plaintiff, Judith M. Ockenfels, individually on behalf of herself, bringing this

22 action against, Citibank, N.A. and alleging as follows:

23      1.    Plaintiff first brings this action against Defendant Citibank, N.A. (hereinafter

24 "Citibank" or "the Creditor" or "Defendant" or "HDCS"), for violations of the Telephone

25 Consumer Protection Act (hereinafter the "TCPA") 47 U.S.C. § 227 *et seq*., and for abusive

26 telemarketing acts or practices as prohibited under Title 16 of the Federal Code of Regulations;

27

28 COMPLAINT                        - 1 -

1    by Citibank and its present, former, and/or future direct and indirect parent companies,

2    subsidiaries, affiliates, agents, and/or related entities. Citibank has so-violated the TCPA by

3    contacting Plaintiff on her cellular/wireless telephone as it is defined and strictly prohibited

4    under 47 U.S.C. § 227 *et seq.*, without her prior express consent within the meaning of the

5    statute's provisions. In so doing, Citibank has also violated telemarketing rules as set forth

6    under 15 U.S.C. § 6102, 16 CFR § 310.4, by engaging in abusive telemarketing acts or

7    practices as they directly relate to the TCPA violations.

8           2.     On December 29, 2008, the Federal Communications Commission (hereinafter

9    "FCC" or "Commission") issued a citation to Citibank for violations of the TCPA and Do-Not

10   Registry, admonishing Citibank that "[i]f, after receipt of this citation, you or your company

11   violate the Communications Act or the Commission's rules in any manner described herein,

12   the Commission may impose monetary forfeitures not to exceed $11,000 for each such

13   violation or each day of a continuing violation occurring before September 2, 2008, and

14   $16,000 for each such violation or each day of a continuing violation occurring on or after

15   September 2, 2008."

16          3.     Notwithstanding the FCC citation and prior violations of the TCPA, Citibank

17   continued to violate the TCPA by contacting Plaintiff on her cellular/wireless telephone as

18   it is prohibited under the statute. Citibank so-contacted Plaintiff without obtaining her prior

19   express consent within the meaning of the TCPA; also ignoring her first revocation of the

20   consent Citibank circumvented before a second revocation stopped the abusive calls.

21   The calls posed relative risk to Plaintiff's personal and/or public safety, and Citibank likewise

22   ignored all applicable do-not-call protections, while concurrently violating telemarketing

23   rules established by the Federal Trade Commission (hereinafter "FTC"); another commission

24   whose authority guides the relevant TCPA provisions. As a result of said misconduct,

25   Citibank was further negligent in failing to take to account otherwise foreseeable and

26   far-reaching harm to Plaintiff, at all times relevant to the numerous instances where such

27   violations were repeatedly committed.

28   COMPLAINT                                      - 2 -

1    4.    Plaintiff second brings this action against Defendant Citibank, N.A. for

2    noncompliance with the Fair Credit Reporting Act (hereinafter "FCRA") 15 U.S.C. §1681 *et seq.*,

3    by Citibank and its present, former, and/or future direct and indirect parent companies,

4    subsidiaries, affiliates, agents, and/or related entities. Citibank has failed repeatedly to comply

5    with FCRA requirements, beginning with furnishing inaccurate information directly to a

6    credit agency and/or agencies, with actual knowledge of the error. By extension, Citibank has

7    also precluded in-fact accurate information from appearing within Plaintiff's consumer credit

8    report(s) accordingly with fair credit reporting rules.

9    5.    Citibank's FCRA noncompliance has likewise persisted forward within Plaintiff's

10   consumer credit report(s) to present-day, despite (2) documented disputes filed separately;

11   first with the reporting agency, then directly with Citibank. As such, Citibank is precluding

12   prompt and appropriate correction of the inaccurate information, and ultimately the express

13   intent of the statute's protective provisions as clearly set forth.

14   6.    Plaintiff third brings this action against Defendant Citibank, N.A. for tort Negligent

15   Duty of Care (re: Home Depot Credit Services account ending in 1195), by Citibank and its

16   present, former, and/or future direct and indirect parent companies, subsidiaries, affiliates,

17   agents, and/or related entities. Upon inception, over the course of account administration, and

18   surviving Plaintiff's voluntary account closure upon full payment to current-day, Citibank

19   has repeatedly failed to exercise an appropriate obligation to and/or standard of reasonable

20   customer care, and to take account of the foreseeable harm and/or losses that such failures

21   have and/or continue to cause her.

22   7.    Plaintiff fourth brings this action against Defendant Citibank, N.A. for Tortious

23   Interference and Loss of Opportunity, by Citibank and its present, former, and/or future direct

24   and indirect parent companies, subsidiaries, affiliates, agents, and/or related entities. By virtue

25   of the scope of Plaintiff's presiding causal complaints herein, Citibank's willful misconduct

26   has resulted in measurable interference and lost opportunity directly in relationship to

27

28   COMPLAINT                                     - 3 -

1   Plaintiff's self-employment business operations and third-party Independent Contractor

2   relations. As such, Citibank has failed yet further to take account of the foreseeable harm and/

3   or losses that such failures have and/or continue to cause her.

4         8.   Plaintiff ultimately brings this action for injunctive and declaratory relief,

5   damages and other equitable remedies; for Citibank's violations of the TCPA and tele-

6   marketing rules under the FTC Code of Federal Regulations; violations of the FCRA; and for

7   Negligent Duty of Care and Tortious Interference and Loss of Opportunity harm(s) caused

8   Plaintiff as a result of all violations complained of herein.

9                   **PARTIES**

10       9.   Plaintiff Judith M. Ockenfels is an individual citizen of the State of Arizona,

11   residing in the city of Tucson.

12       10.   On information and belief, Plaintiff alleges that Citibank, N.A., is the successor

13   to Citibank South Dakota, N.A., and a subsidiary of its parent Citigroup, Inc. At all times

14   mentioned herein, Citibank is and was chartered as a national bank, with its primary place

15   of business located in the State of South Dakota, and doing business throughout the country,

16   including this district.

17               **JURISDICTION AND VENUE**

18       11.   As these matters in controversy exceed $75,000, this Court has jurisdiction

19   pursuant to 28 U.S.C. § 1332(a); as these matters in controversy exceed $50,000, this Court

20   has jurisdiction pursuant to 15 U.S.C. § 6104(a)(d)(e)-(f). Plaintiff is entitled to up to $1,500

21   in statutory damages for each of the hundreds of calls that constitute willful and/or

22   knowing violation of the TCPA and related telemarketing rules established by the FTC; up to

23   $1,000 in statutory damages for willful noncompliance with the FCRA; up to $3500 actual

24   and compensatory damages for the harm suffered due to tortious interference and loss of

25   opportunity; and punitive damages as allowed by the Court to deter any such future statutory

26   and tortfeasor offenses on all counts, subject to equitable adjudication of her Complaint.

27

28   COMPLAINT            - 4 -

12.   As Plaintiff and Defendant are alleged as citizens and/or residents of or located in different states, this Court accordingly has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

13.   Venue is otherwise proper in the United States District Court of Arizona pursuant to 28 U.S.C. §§1391 (b)(2), (c)(2), and 1441(a), whereby Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction with respect to the civil action in question, and because Defendant's contacts with this District are sufficient to subject it to personal jurisdiction. Venue is also proper in this District because Plaintiff has resided in this District at all times relevant to this claim such that a substantial part of the events giving rise to the claims occurred in this District.

14.   Pursuant to 28 U.S.C. § 1331, the district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. This Court thus has original subject matter jurisdiction with respect to this action's TCPA claims pursuant to [47 U.S.C.] § 227(b)(3); § 227(c) and related FTC rules pursuant to 15 U.S.C. § 6104(a)(d)(e)-(f) and 16 CFR § 310.4 respectively; and with respect to this action's FCRA claims pursuant to 15 U.S.C. § 1681p § 618; all wherein a person or entity may, if otherwise permitted by the laws or rules of court of a State, may bring an action in an appropriate court of that State. Likewise, original subject matter jurisdiction is appropriate with respect to this action's tort claims, pursuant to the jurisprudence of common law tort in the State of Arizona under ARS Title 12 *et seq.*

## I. 47 U.S.C. §227 *ET SEQ.* • TELEPHONE CONSUMER PROTECTION ACT *and* 15 U.S.C. § 6102-TELEMARKETING RULES • 16 CFR PART 310

15.   The TCPA was enacted in 1991, and sought to address certain telecommunications practices in response to a growing number of consumer complaints.[1] Concerned with the

---

[1] Telephone Consumer Protection Act of 1991, Pb. L. No. 102-243, 105 Stat 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA, amended Title II of the Communications Act of 1934, 47 USC § 201 *et seq.*

nuisance, expense and burden imposed by prerecorded, "autodialed" telephone solicitations in particular, Congress found such practices to be both a nuisance and an invasion of consumer privacy;[2] and specifically that automated or prerecorded phone calls pose a greater nuisance and invasion of privacy than live calls [and that such calls can be costly and inconvenient].[3]

16.    The FCC also amended the original Act to include such calls to wireless telephones as posing a relative risk to public safety.[4] Peripheral contributions to a Declaratory Ruling and Order since adopted (2015) further elaborated that unwanted "robocalls" disturb productivity or privacy, and can even threaten physical safety.[5]

17.    Among other things, the TCPA specifically regulates the use of automatic telephone dialing systems (herein also "ATDS"), or "autodialers" employing an artificial or prerecorded voice, as defined under 47 U.S.C. § 227(a)(l). The plain language section of 47 U.S.C. § 227(b)(l)(A)(iii) specifically prohibits the use of autodialers to make any call to a wireless number for non-emergency purposes, and 47 U.S.C. § 227(b)(l)(B) specifically prohibits such calls without prior express consent of the called party. The FCC further emphasizes that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed.[6]

18.    The FCC also more recently held that a caller remains liable for TCPA violations when it relies upon the assertion of an intermediary that the consumer may have previously given consent to. It emphasized that the intermediary may only convey consent that has actually been provided by the consumer, but stressed that the intermediary cannot provide consent on their behalf.[7]

---

2 S. Rep. No. 102-178, ¶ 1 (noting that telephone solicitations are both a nuisance and an invasion of privacy).
3 2003 FCC Report and Order, 18 FCC Rcd at 14115, ¶ 165.
4 1992 FCC Report and Order, 7 FCC Rcd at 8753, ¶ 2.
5 2015 FCC Declaratory Ruling and Order, 30 FCC Rcd at 8035, ¶ 155.
6 2008 FCC Declaratory Ruling, 23 FCC Rcd at 564-65, ¶ 10.
7 2014 FCC Declaratory Ruling, 29 FCC Rcd at 3447, ¶ 14.

COMPLAINT                                    - 6 -

19.    Additionally, the FCC has declared, ruled and ordered that a called party may revoke consent at any time and through any reasonable means, effectively adding to well established common law. Likewise, a caller may not limit the manner in which revocation may occur; the FCC noting that without a method of revoking consent, consumers would effectively be locked in "at a point where they no longer wish to receive such [communication]." Under long-standing Commission precedent, the burden is therefore on the caller to prove it obtained the necessary prior express consent if any question of consent is in dispute.[8]

20.    The foregoing restrictions are ultimately regulated by the FTC, pursuant to their authority over the TCPA's section [47 U.S.C.] § 227(c). The larger category regulation of unsolicited, non-emergency (i.e. telemarketing) calls is otherwise codified at 15 U.S.C. § 6102 and 16 CFR § 310, respectively.

21.    The FTC recognized that the effectiveness of protections otherwise afforded by company-specific do-not-call rules have been reduced significantly by dead air and hangup calls resulting from automated/predictive dialers; in-effect denying consumers the opportunity to selectively invoke their do-not-call rights. The FTC also determined that such intrusions have led many consumers to disconnect their phones during portions of the day or avoid answering their phones altogether, with evidence to believe the cumulative effect of these disruptions in the lives of millions of Americans each day is significant.[9]

22.    The FTC's regulation of unsolicited, non-emergency calls, much like the Fair Debt Collections Practices Act (hereinafter "FDCPA"),[10] also prohibits certain telemarketing acts or practices deemed specifically to be abusive, as set forth under 16 CFR § 310.4. A pattern of calls whereby 'causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number' is prohibited pursuant to 16 CFR § 310.4(b)(1)(i).

---

[8] 2015 FCC Declaratory Ruling and Order, 30 FCC Rcd at 7993-99(b), ¶ 55-70.
[9] 2003 FCC Report and Order, 18 Fed. Reg. at 14035, ¶ 28-29.
[10] FDCPA 15 USC § 1692d § 806.

COMPLAINT                                    - 7 -

23.   The Code then and well-considers abusive the act or practice of denying or interfering with a person's right to be placed on any registry to "opt out" of receiving such calls, pursuant to 16 CFR§ 310.4(b)(1)(ii). The prohibited conduct further germane to this section of the Code includes but is not limited to harassing any person who makes such a request; hanging up on that person; and/or failing to honor the request.

24.   The FTC-established National Do-Not-Call Registry became effective on October 3, 2003. Replete with examples of consumers that had received numerous such calls on a daily basis, the registry was established to provide prohibitive protection.[11] Any circumvention and/or denial of a person's already-established wish not to receive such calls thus violates the Code under 16 CFR § 310.4(b)(1)(iii)(B).

25.   While the Registry's rules do have jurisdictional restrictions, the FTC retained and reaffirmed the provisions of the TCPA, maintaining that any [seller] entities with an otherwise "established business relationship" cannot call any cellular/wireless telephone without first obtaining prior express consent of the registered recipient.[12] Furthermore, pursuant to 16 CFR § 310.4(b)(1)(iii)(B)(1-2), said express consent must be in writing as it is defined. Otherwise, pursuant to 16 CFR § 310.4(b)(1)(iii)(A), the calling entity claiming an established business relationship with such a recipient must clearly demonstrate that person has not previously stated that he or she does not wish to receive any such telephone calls.

26.   Where prerecorded messages and "abandoned calls" as described are concerned, any provision under 16 CFR § 310 does not affect any seller's or telemarketer's obligation to comply with relevant state and federal laws, including but not limited to the TCPA, 47 U.S.C. 227 [and 47 CFR part 64.1200], pursuant to 16 CFR § 310.4(b)(4)(iii).

---

[11] 2003 FCC Report and Order, 18 FCC Rcd. at 14031-32, ¶ 22.
[12] 2003 FCC Report and Order, 18 FCC Rcd. at 14032, ¶ 23.

COMPLAINT                              - 8 -

## II. 15 U.S.C. §1681 *ET SEQ.* • FAIR CREDIT REPORTING ACT

27.   Together with the FDCPA, the FCRA forms the foundation of consumer rights law in the United States. Originally passed in 1970, the FCRA is enforced primarily by the FTC and the Consumer Financial Protection Bureau (hereinafter "CFPB").[13] Designed to promote the accuracy, fairness and privacy of consumer information contained in the files of consumer reporting agencies, the policy was intended to protect consumers from the willful and/or negligent inclusion of inaccurate information in their credit reports.

28.   15 U.S.C. § 1681s-2 § 623 comprehensively sets forth the responsibilities of furnishers of information to consumer reporting agencies. The plain language section of 15 U.S.C. § 1681s-2 § 623(a)(1)(A) specifically prohibits furnishers of information to consumer reporting agencies from reporting inaccurate information with actual knowledge of the error.  A person furnishing information relating to any consumer reporting agency thus assumes liability, in the event that they have actual knowledge that the information is inaccurate. 15 U.S.C. § 1681a § 603 lends clarity with definitions and rules of construction regarding this provision. Otherwise, 'actual knowledge' is a legal construct wherein the standard is subjective, such that understanding a fact as true would lead to further investigation.[14]

29.   Pursuant to 15 U.S.C. § 1681c § 605(e), if a consumer reporting agency is notified that a credit account of a consumer was voluntarily closed by the consumer, the agency must indicate that fact in any consumer report that includes information related to the account. Thus and so pursuant to 15 U.S.C. § 1681s-2 § 623(a)(4), furnishers of information to consumer reporting agencies are responsible for reporting that the consumer's account closure was voluntary.

30.   The plain language section of 15 U.S.C. § 1681s-2 § 623(a)(1)(B) specifically prohibits a person furnishing information relating to a consumer to any consumer reporting

---

[13] Title VI of Pub.L. 91–508, 84 Stat. 1114, amended to add a title VI to the Consumer Credit Protection Act, Pub.L. 90–321, 82 Stat.146, (June 29, 1968).

[14] *Black's Law Dictionary*, 2nd Ed. © 1910, Online Legal Dictionary (actual-knowledge).

COMPLAINT                                             - 9 -

agency if the person has been notified by the consumer that specific information is inaccurate; whereby the information is, in-fact inaccurate. The duty of a furnisher is then and so to review all relevant information provided by the consumer reporting agency, pursuant to 15 U.S.C. § 1681s-2 § 623(b)(1)(B).  This includes all relevant information regarding the dispute that is received by the agency from the consumer, pursuant to 15 U.S.C. § 1681i § 611(a)(2)(B).

31. Whether a dispute is submitted directly to the furnisher as described in section 15 U.S.C. § 1681s-2 § 623(a)(8)(D) or to a reporting agency, and whereby such information disputed by a consumer can be reasonably found and/or proven to be in-fact inaccurate or incomplete as they have documented it, and/or as it has been reported to a consumer reporting agency, it is the duty of furnishers [upon notice of dispute] to modify, delete, or permanently block the reporting of that information, as pursuant to 15 U.S.C. § 1681s-2 § 623(b)(1)(E).

32.  As it relates to the TCPA's requirement that prior express consent be obtained directly from consumer to contact them via their cellular phone number, 15 U.S.C. § 1681b § 604 (c)(2(A) specifies that, a person who intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, may receive [pursuant to paragraph (1)(B)], only the name and address of a consumer.

### III. NEGLIGENT DUTY OF CARE

33.   The American Restatement of the Law, Second is an influential treatise issued by the American Law Institute that summarizes the general principles of common law, or United States tort law.[15]

34.   Negligence, in its civil relation, is such an inadvertent imperfection, by a responsible human agent, in the discharge of a legal duty, as immediately produces, in an

---

[15] Restatement of the Law, Second, Torts, © 1977, The American Law Institute.

ordinary and natural sequence, a damage to another.[16]  A general duty of care is a legal obligation, which is imposed to require adherence to a standard of reasonable conduct and care while performing any acts that could foreseeably harm others.[17] Jurisprudence of common law typically defines the duty of care by individual case, subjecting the defendant to liability for tortfeasor injury that then compensates the plaintiff for the otherwise foreseeable harm.

### IV. TORTIOUS INTERFERENCE AND LOSS OF OPPORTUNITY

35.   Tortfeasor harm experienced by a plaintiff as "loss of chance" or "loss of opportunity" is likewise a general, common law matter that stands upon cause-and-effect doctrine. Tortious interference and loss of opportunity are broadly defined to infer costs incurred by interference with contractual relations, removing from use, deprivation, forfeiture, loss of availability, loss of productivity, loss of prospective benefit, loss of readiness, loss of use, privation, removal, and sacrifice.[18] The law is invited to assess hypothetical outcomes, either affecting the claimant or a third party, where the defendant's breach [of contract or of the duty of care] for the purposes of negligence deprived the claimant of the opportunity to obtain a benefit and/or avoid a loss. For these purposes, the remedy of damages is normally intended to compensate for the claimant's loss of expectation.[19]

### **MATERIAL ALLEGATIONS**

36.   At all times relevant to this Complaint, Plaintiff was an individual residing in the State of Arizona. Plaintiff is also a "person" as defined by 47 U.S.C. § 153(39); as is Defendant. (TCPA) 47 U.S.C. § 227 *et seq.* and 15 U.S.C. § 6102, 16 CFR § 310.4 : Matters of Fact

37.   In April, 2015, Plaintiff acquired a 'Temporary Charge Pass' upon checkout, for a Home Depot consumer credit account. The acquisition was based on an offer of a

---

[16] *Black's Law Dictionary*, 2nd Ed., 7S4, Wiart. Neg. © 1910, Online Legal Dictionary (negligence).
[17] *Wikipedia.org*. S.v. "Duty of care" Retrieved March 2, 2017 from encyclopedia.thefreedictionary.com.
[18] *Burton's Legal Thesaurus*, 4E. © 2007 by William C. Burton. Used with permission of The McGraw-Hill Companies, Inc. (Associated concepts: interference with contractual relations, loss of opportunity doctrine).
[19] *Wikipedia.org*. S.v. "Loss of chance in English law."

COMPLAINT                                    - 11 -

promotional discount of $25 off her purchase(s), which totaled $149.69 with the discount applied. Plaintiff did not provide her cellular/wireless phone number [to the cashier] at any time during the "pitch" and less-than five-minute checkout transaction.

38.   Plaintiff has not at any time subsequently provided Citibank and/or Home Depot Credit Services (hereinafter "HDCS") with her cellular/wireless phone number, in any manner written, oral or electronic.

39.   Between June and October, 2015, Citibank repeatedly contacted Plaintiff on her cellular/wireless telephone, between approximately (8) to (10) times per day. Plaintiff received these repeated, harassing "robocalls" at all hours of the day, (7) days a week. Because these calls were met with "dead air" and were prerecorded, Plaintiff had no ability to request that the calls stop, or to voice her complaints to a real/live person.

40.   In late October, 2015, Plaintiff contacted HDCS at the customer service number provided, with the express purpose of revoking the otherwise circumvented consent to make such calls. Before accusing Plaintiff of a threat and then abruptly terminating the call, Citibank's customer service representative offered that telephone numbers are often skip-traced when not provided by the consumer.[20]

41.   Despite Plaintiff's revocation, Citibank persisted in repeatedly contacting Plaintiff on her cellular/wireless telephone, at the same rate and at all hours of the day. Because her revocation request was ignored, Plaintiff still had no viable means to request that the calls stop, even in voicing her complaints to a real/live person.

42.   Plaintiff drafted a comprehensive formal letter of complaint to Defendant, in late November, 2015;  addressed to Citibank, with a 'cc' to Home Depot's corporate office. Among other things, the letter addressed the relentless robocalling practice; namely that Plaintiff did not provide her cellular/wireless telephone number to Home Depot personnel

---

[20] *Wikipedia.org*. S.v. "Skiptrace" (Skip-tracing tactics may be employed by a debt collector attempting to locate a subject whose contact information is not immediately known).

1    during the transaction that established the temporary account, or anytime thereafter.

2    Plaintiff emphasized further that her initial revocation of their circumvented consent had been

3    ignored one month prior, demanding yet again that the calls stop.

4        43.    Until this time, such as when Plaintiff's second complaint and revocation of

5    otherwise-acquired consent was actually heeded and implemented, Citibank incessantly

6    "robodialed" Plaintiff on her cellular/wireless telephone, totaling well over (200) instances.

7        44.    The very nature and number of robocalls caused Plaintiff enormous nuisance

8    and distraction, while provoking exasperation germane to Citibank's pattern of negligent and

9    willful misconduct held to account herein. The calls posed many relative risks to Plaintiff's

10    personal and/or public safety, including but not limited to working and living while a home-

11    office remodel was underway, operating a motor vehicle, and engaging in assorted activities

12    in various otherwise uncontrolled environments.

13        45.    After sending her letter of complaint and prior to Citibank's written response

14    thereto, Plaintiff filed a formal complaint with the FCC re: the Creditor's unlawful robocalls,

15    lack of prior express consent, and additional relevant complaints as of that date.

16        46.    Plaintiff has otherwise never been aware, or made aware of in any manner

17    oral, written or otherwise, a company-specific do-not-call policy, set of rules, list/database,

18    or mechanism by which she could opt-out of receiving the automated, prerecorded calls.

19    Lingering "dead air" upon answering only the first few calls otherwise frustrated her to

20    disconnect the calls, redirect them (i.e. to voicemail), and/or shut off her cellular/wireless

21    phone entirely.

22        47.    Citibank's written correspondence at all times relevant likewise did not include

23    guidance or directives regarding any do-no-call options. However, billing statements Plaintiff

24    received did contain specific disclaimers and opportunity for provision of telephone numbers

25    and other personal information; clearly indicative of Citibank's understanding of the legal

26    requirement for her consent.

27

28    COMPLAINT                          - 13 -

48.   Plaintiff's cellular/wireless telephone number has been actively registered with the National Do-Not-Call Registry since December, 2004. At all times relevant to this Complaint, Plaintiff never provided any express written consent authorizing waiver of her registration thus allowing Citibank to place calls to the telephone number so registered. (TCPA) 47 U.S.C. § 227 *et seq.* and 15 U.S.C. § 6102, 16 CFR § 310.4: Matters of Law

49.   All telephone contact by Citibank to Plaintiff on her cellular/wireless telephone occurred via an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1), using an "artificial or prerecorded voice" as set forth in 47 U.S.C. § 227(b)(1)(A).

50.   The telephone number that Citibank used to contact Plaintiff, occurring via an "automatic telephone dialing system" and using an "artificial or prerecorded voice," was assigned to a cellular/wireless telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

51.   Citibank did not make telephone calls to Plaintiff's cellular/wireless telephone "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

52.   During the transaction that resulted in the debt owed, Plaintiff did not provide "prior express consent" allowing Citibank to place telephone non-emergency calls to her cellular/wireless telephone, via an "automatic telephone dialing system" and using an "artificial or prerecorded voice," as set forth in  47 U.S.C. § 227(b)(1)(B).

53.   Citibank's non-emergency calls to Plaintiff's cellular/wireless as made via an "automatic telephone dialing system" and using an "artificial or prerecorded voice," violated the prohibitions set forth in 47 U.S.C. § 227(b)(1)(A-B).

54.   Citibank caused Plaintiff's telephone to ring, and/or engaged her repeatedly or continuously with intent to annoy, abuse, or harass her at the called number, in violation of the preceding provision, 16 CFR § 310.4(b)(1)(i) and in similarity with the prohibition set forth under FDCPA 15 U.S.C. § 1692d § 806 regarding collection calls.

55.   Citibank's automated, prerecorded calls effectively denied and/or interfered with Plaintiff's right to be placed on any Company registry of names and/or telephone numbers of

COMPLAINT                                      - 14 -

1    persons who do not wish to receive their outbound telephone calls; also consistent with those

2    offense(s) described by 16 CFR § 310.4(b)(1)(i).

3        56.   Citibank denied Plaintiff's first revocation (of circumvented consent), by any

4    reasonable means as it is set forth in the FCC's Declaratory Ruling and Order (see again ¶ 19

5    herein). In doing so, Citibank's customer service representative harassed Plaintiff for making

6    her request, hung up on her, and ultimately failed to honor her request; acting with an abusive

7    pattern of conduct as described by 16 CFR § 310.4(b)(1)(ii).

8        57.   Wherein Plaintiff's telephone number was long-established on the National

9    Do-Not-Call Registry maintained by the FTC, Citibank violated 47 U.S.C. § 227(c)(3)(F).

10    Wherein Plaintiff never provided any consent written or otherwise to permit such calls from

11    the Creditor, Citibank violated 16 CFR § 310.4(b)(1)(iii)(B).

12        58.   Citibank's violations of the TCPA and U.S. Code pertaining to commercial

13    telemarketing practices were negligent, knowing and/or willful, as substantiated by the

14    pertinent foregoing claims.

15        59.   Plaintiff has been harmed by the acts of Citibank, as were performed for HDCS

16    [on behalf of their partnered agent, Home Depot], and in violation of the TCPA and U.S. Code.

17        60.   Plaintiff's Complaint seeks injunctive and declaratory relief, as well as punitive

18    and/or monetary damages, as they pertain to Citibank's violations of the TCPA and U.S. Code

19    regulating commercial telemarketing practices.

20        61.   Pursuant to the well-defined questions of fact and law raised herein with respect to

21    47 U.S.C. § 227 *et seq.*; the 2008 FCC citation against the Creditor; and 15 U.S.C.

22    § 6102 *et seq.* as it incorporates 16 CFR § 310, the burden is on Citibank to otherwise clearly

23    demonstrate all of Plaintiff's foregoing allegations against them in any part, or as wholly untrue.

24    Such well-defined questions of fact and law include but are not limited to, the following:

25        a.    Whether Citibank made non-emergency calls to Plaintiff's cellular/wireless

26            telephone via an automatic telephone dialing system using an artificial or

27            prerecorded voice;

28    **COMPLAINT**        - 15 -

b. Whether Citibank can meet its burden of showing it obtained Plaintiff's prior express consent (i.e. clearly stated by Plaintiff) during the transaction that resulted in the debt owed;

c. Whether Citibank's pattern of automated, prerecorded calls caused Plaintiff's phone to ring and/or engaged her repeatedly or continuously with intent to annoy, abuse, or harass her;

d. Whether Citibank harassed Plaintiff for making her first revocation [of circumvented consent] request by reasonable means, by hanging up on her and failing to honor her request;

e. Whether Citibank, at any time relevant to Plaintiff's claims, provided her any Company-specific do-not-call provisions; and

f. Whether Citibank can meet its burden of clearly demonstrating it obtained Plaintiff's written consent (i.e. authorization including signature and provision of applicable telephone number) to permit waiver of her registration to the National Do-Not-Call Registry, allowing the Creditor to place any calls to her.

62. Fair and efficient adjudication of this controversy as well as equitable injunctive relief is essential to compel Citibank to comply with the TCPA and the FCC's 2008 citation for previous violations, as well as those acts in violation of the U.S. Code of Federal Regulations regarding abusive telemarketing acts or practices.

63. Citibank has acted on grounds making final injunctive relief and corresponding declaratory relief wholly appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA and U.S. Code of Federal Regulations violations complained of herein are imminently and/or substantially likely to continue in the future if an injunction is not entered.

FCRA 15 U.S.C. § 1681 *et. seq*: Matters of Fact

64. Concurrently with the transaction that resulted in the debt owed, Citibank performed a credit inquiry through Equifax, whereupon Plaintiff's [$4000] initial credit limit

1   was established. Given the forthcoming facts and thus based upon knowledge and belief

2   relevant to the entirety of this Complaint, Plaintiff presumes Equifax to be Citibank's primary

3   credit-reporting agency affiliate.

4       65.   In January of 2016, Plaintiff mailed a letter to Citibank (i.e. addressed to HDCS),

5   which accompanied submission of the final payment on her Home Depot Consumer Credit

6   Card account. Said letter requested concurrent closure of her credit account. Plaintiff also

7   stipulated contingent with closure, that Defendant furnish all (3) credit bureaus with specific

8   notation that the closure was voluntary (i.e. at her request).

9       66.   Defendant confirmed Plaintiff's request in-full and with specificity later the same

10   month, via a 'Confirmation of Your Request' form-letter.

11       67.   From February 2016 to present-day, Plaintiff's consumer credit report from

12   Equifax Credit Information Services (hereinafter "Equifax" or "Agency") has conspicuously

13   displayed the false statement: 'ACCOUNT CLOSED BY CREDIT GRANTOR.' To her

14   best knowledge and information and at all times relevant to the FCRA claims herein, any

15   annotation that the account closure was voluntary remains absent from all (3) of Plaintiff's

16   consumer credit report(s), including but not limited to those generated by Equifax.

17       68.   In September, 2016 and February, 2017 respectively, Plaintiff filed (2) consumer

18   credit reporting disputes; the first with Equifax and the second directly with Citibank.

19   Among other items, Plaintiff disputed the false statement as inaccurate information furnished

20   by Citibank to the Agency, and demanded its removal. Plaintiff likewise challenged Citibank

21   directly, regarding measures to prevent the inaccurate information from reoccurring on future

22   reports. In both instances, Plaintiff provided authentic documentation of the correspondence

23   noted above, in order to corroborate her dispute(s) with material facts of record.

24       69.   Subsequent to both disputes, HDCS responded directly with Plaintiff (3)

25   times via a 'Regarding Your Request' form-letter. The letter(s) repeatedly conveyed that

26   the Creditor was unable to change the information reported, claiming it accurately reflects

27   Plaintiff's account history with them.

28   COMPLAINT                                    - 17 -

70.  Plaintiff received (3) incremental investigation results-reports from Equifax subsequent to her first dispute. The first (2) of those reports noted the 'additional information' as disputed, with the false statement/inaccurate information absent. The third report still noted the 'additional information' as disputed, yet with the false statement having reappeared. Investigation reports from Experian and TransUnion reflect the same dispute notice and final "update," whereby the false statement remained amidst their investigation results.

71.  Plaintiff has retrieved several 3-bureau consumer credit reports in the interim following each dispute; all confirming the timely (i.e. after 30 days) reappearance of the false statement, and its apparent permanence under Equifax's reporting. Likewise, any annotation of the [FDCA-required] statement (i. e. Plaintiff's voluntary closure of the account) remains absent from all report(s) to present-day.

72.  Regardless of the Citibank's assessments and/or motives behind furnishing the false statement and refusing to correct it accordingly with the factual status of her voluntary account closure, Citibank has ultimately imposed upon Plaintiff their own compulsory duty to correct the error; notwithstanding any consideration toward the remaining reporting duration of (6) years forward, or until such time as the (7)-year reporting requirement expires. When further considering the conspicuous and emphatic (i.e. all-caps) presence of the false statement in that lengthy interim, Citibank is subjecting any future queries to ongoing, unjustified and inequitable bias that unlawfully favors the Creditor.

73.  Given Citibank's real-time initial inquiry into Plaintiff's credit standing occurring via primary credit-reporting agency affiliate Equifax (see again ¶ 64 herein) , it is by-and-large conceivable that Citibank readily and/or eventually acquired Plaintiff's cellular/wireless phone number from the Agency, upon establishing her HDCS account and credit limit.

74.  Plaintiff has since requested of all (3) credit reporting agencies that all phone numbers associated with her personal profile information be removed from the record; primarily her only active number—that of her cellular/wireless phone. However, because

1    Plaintiff has not received any follow-up correspondence from Equifax subsequent to her last

2    dispute or otherwise, she has no knowledge that any such action was actually taken by the

3    Agency, per her request.

4    FCRA 15 U.S.C. § 1681 *et. seq*: Matters of Law

5        75.   As a furnisher [of information to consumer reporting agencies], Citibank has

6    breached its duty to provide accurate information pursuant to 15 U.S.C. § 1681s-2 § 623(a)(1(A).

7    Citibank furnished inaccurate information regarding Plaintiff's Home Depot consumer credit

8    card account closure, with actual knowledge of the error as it is defined under 15 U.S.C.

9    § 1681s-2 § 623(a)(1)(D).

10       76.   By falsely notifying credit reporting agencies of Plaintiff's account closure

11   contrary to the factual record it had actual knowledge of, Citibank has breached its duty

12   pursuant to 15 U.S.C. § 1681s-2 § 623(a)(4).

13       77.   Because Citibank failed to diligently report Plaintiff's voluntary account closure

14   in compliance with the FCRA, any and/or all of Plaintiff's consumer credit report(s) remain

15   void of any agency reporting of the correct [voluntary closure] notice to-date. As a

16   consequence, Citibank has further and unnecessarily compromised agency compliance

17   pursuant to 15 U.S.C. § 1681c § 605(e).

18       78.   In failing to appropriately investigate, review, verify and resolve Plaintiff's

19   first consumer credit report dispute [to Equifax] accordingly with the actual record of her

20   account as Plaintiff documented to the Agency, Citibank has breached its duty as furnisher of

21   information upon notice of dispute pursuant to 15 U.S.C. § 1681s-2 § 623(b).

22       79.   In continuing to report in-fact inaccurate information after notice and confirmation

23   of errors by Plaintiff via her second consumer credit report dispute directed to the Creditor,

24   Citibank has breached its duty as furnisher of information upon notice of dispute pursuant to

25   15 U.S.C. § 1681 § 623(a)(1)(B).

26

27

28   COMPLAINT                              - 19 -

80. As with her first consumer dispute via Equifax, Plaintiff fully corroborated her direct dispute with Citibank by providing the same factual documentation previously noted (see again ¶ 65-66 herein) and submitted to Equifax; as such in full compliance with her duties to facilitate prompt resolution as advised under 15 U.S.C. § 1681 § 623(a)(8)(D).

81. Notwithstanding, Citibank has unlawfully undermined any veracity behind Plaintiff's ability to dispute the inaccurate information directly with the furnisher, as set forth under 15 U.S.C.§ 1681 § 623(a)(8); effected by any or all of the following means:

  a. wrongfully weighing any and/or all of the considerations generally afforded them toward compliance under certain conditions;

  b. wrongfully determining Plaintiff's direct dispute was "frivolous" or "irrelevant" because her provision of information to investigate the disputed information was somehow insufficient;

  c. wrongfully determining Plaintiff's direct dispute was "frivolous" or "irrelevant" because it was substantially the same as a dispute she had previously submitted with respect to duties allegedly already performed on her behalf.

82. By virtue of the foregoing failures, Citibank is wrongfully exempting itself from the compulsory and/or incumbent duties as a furnisher to permanently correct the inaccurate information. In repeatedly failing to lawfully redress Plaintiff's disputes and thus enable any agency to in-turn report the disputed information accurately, Citibank has breached its duties pursuant to 15 U.S.C. § 1681 §§§ 623(a)(2), 623(a)(8)(E), and 623(b)(1) respectively.

83. Citibank has ultimately imposed the unreasonable necessity upon Plaintiff to otherwise submit an inconspicuous, conflicting and potentially circumvented statement that is subject to unjustified and inequitable bias that unlawfully favors the Creditor. Such conduct and end result in the case of this Complaint clearly defeats the entire express purpose of the FCRA as stated under 15 U.S.C. § 1681 § 602.

COMPLAINT                                    - 20 -

84. Any action by Citibank in acquiring Plaintiff's cellular/wireless phone number from Equifax or any agency is in violation of the limitations set forth under 15 U.S.C. § 1681b § 604 (c)(2)(A), [pursuant first to paragraph (1)(B)], as it relates to the TCPA claims herein.

85. Citibank's noncompliance with the FCRA pertaining to its duties as a furnisher [of information to consumer reporting agencies] are negligent, knowing and/or willful, as substantiated by the pertinent foregoing claims.

86. Plaintiff has been harmed by the acts of Citibank, as were and are performed for HDCS [on behalf of their partnered agent, Home Depot], and in noncompliance with the FCRA.

87. Plaintiff's Complaint seeks injunctive and declaratory relief, as well as monetary damages, as they pertain to Citibank's noncompliance with the FCRA.

88. Pursuant to the well-defined questions of fact and law raised herein with respect to FCRA 15 U.S.C. § 1681 *et. seq.*, the burden is on Citibank to otherwise clearly demonstrate all of Plaintiff's foregoing allegations against them in any part, or as wholly untrue. Such well-defined questions of fact and law include but are not limited to, the following:

    a.    Whether Citibank furnished inaccurate information to Equifax or any credit reporting agency, specific to Plaintiff's Home Depot consumer credit card account closure;

    b.    Whether Citibank furnished any such inaccurate information with actual knowledge of the error as it is defined under the statute;

    c.    Whether Citibank notified Equifax or any credit reporting agency that Plaintiff's Home Depot consumer credit card account closure was voluntary;

    d.    Whether Citibank has fully met its compulsory and/or incumbent duties as furnisher subsequent to Plaintiff's first consumer credit report dispute with Equifax;

    e.    Whether Citibank weighed any specific considerations upon receipt of Plaintiff's second, direct dispute, and if so, what considerations;

    f.    Whether Citibank determined Plaintiff's second, direct dispute was frivolous and/or irrelevant, and if so, show that she was notified of such a determination;

COMPLAINT          - 21 -

g.  Whether Citibank took any actions to lawfully redress Plaintiff's disputes and thus enable any agency to in-turn report the disputed information with factual accuracy;

h.  Whether leaving the disputed information as-is for Plaintiff to correct and to accept any residual consequences is an equitable end in full compliance with respect to the purpose of the FCRA; and

i.  Whether Citibank obtained any of Plaintiff's personal contact information from Equifax or any related agency, at any time, and/or what information was so-obtained.

89.  Fair and efficient adjudication of this controversy as well as equitable injunctive relief is essential to compel Citibank to fully comply with the FCRA in its duties as a furnisher [of information to consumer reporting agencies].

NEGLIGENT CARE OF DUTY: Matters of Fact

90.  Relative to the hierarchy and chronology of foregoing violations and claims herein, Defendant Citibank has first and foremost failed to exercise reasonable care of duty by evading the 2008 FCC-issued TCPA citation, thus in repeat-violation of long-established Federal law. In the course of doing so, Defendant Citibank recklessly pursued enumerable instances of robocalls in the hundreds, by circumventing Plaintiff's prior express consent to place calls to her cellular/wireless phone number [for any reason]; carelessly failing to recognize, heed, and/or implement Plaintiff's first revocation; and by denying and/or interfering with Plaintiff's do-not-call protections.

91.  Defendant Citibank's consistent pattern of negligent care of duty continued beyond the robocalls and telemarketing abuses, to willful noncompliance with the FCRA. Relevant to all FCRA claims herein, Citibank knowingly furnished incorrect information to [Equifax], contrary to Plaintiff's record of account otherwise, and has failed in it's compulsory and incumbent duties to resolve Plaintiff's disputes.

COMPLAINT                                    - 22 -

92.   Notwithstanding, prior to Plaintiff's interim letter of complaint as sent directly to Defendant Citibank (see again ¶ 42 herein), events and relevant issues clearly indicative of negligent care of duty presented chronologically, as follows:

    a.   Citibank's third-party partner [Home Depot] engaged inappropriately in deceptive and coercive credit card enrollment, on Defendant's behalf;

    b.   Citibank clearly ignored Plaintiff's firm directive upon applying for the temporary credit account, that all correspondence be mailed exclusively to her secure mailing address;

    c.   Citibank carelessly risked Plaintiff's identity and credit security by mailing a pre-activated, "ready-to-use" credit card, to her unsecured mailbox address, against her said directive;

    d.   Citibank further carelessly risked Plaintiff's identity and credit security by mailing correspondence annotated with her full account number, to her [same] unsecured mailbox; still against her said directive and against 'Visa Best Practices;'

    e.   Citibank carelessly neglected to ever provide Plaintiff with any complete consumer credit card agreement whatsoever;

    f.   Citibank unlawfully set out on a robocalling campaign, despite Plaintiff's never-contested compliance with added fees on a mere (2) late payments by mail; and

    g.   Citibank obviously risked Plaintiff's personal and public safety, interfered with Plaintiff's livelihood,  and disrupted her telecommunications and business operations to cause loss of opportunity and more.

93.   Continuing through Plaintiff's account closure to present-day, events, relevant issues and discoveries further indicative of Citibank's negligent care of duty have presented chronologically, as follows:

    h.   Citibank selectively evaded Plaintiff's specific concerns of negligence only via Home Depot's alert versus directly as they were addressed to them;

COMPLAINT                                    - 23 -

i.   Citibank falsely justified their unlawful conduct (hundreds of robocalls, no prior express consent) in lieu of admission to failure pertinent to Plaintiff's first revocation of consent;

j.   Citibank punitively reduced Plaintiff's credit limit by nearly 90% immediately following her letter of complaint and after (8) month's time, on grounds deeply-rooted in deception;

k.   Citibank negatively impacted Plaintiff's consumer credit report and FICO score as a direct result of said reduction to Plaintiff's credit limit;

l.   Citibank carelessly mailed privacy policy communications to Plaintiff, with account# specificity, implying her consumer credit card account was never in-fact fully closed;

m.   Citibank defiantly continues to leave Plaintiff's Equifax consumer credit report dispute unresolved; and

n.   Citibank obliviously continues to interfere with Plaintiff's livelihood, disrupting her business operations to cause loss of opportunity.

94.   As stated, Plaintiff closed her Home Depot consumer credit card account as soon as was possible, for these cumulative reasons. Where Citibank unjustifiably considered her a "risk," Citibank in-fact became the risk to Plaintiff.

NEGLIGENT CARE OF DUTY: Matters of Law

95.   At all times relevant to the foregoing matters of controversy, Citibank has repeatedly and overwhelmingly failed to exercise any appropriate standard of reasonable customer care when administering credit and managing Plaintiff's Home Depot consumer credit account. Under both reasonable and probable cause theory, the Creditor's negligence has presented consistently whereby Citibank failed to dutifully take to account the foreseeable harm that such failure(s) could cause Plaintiff. Both elements of cause and effect are consistent with tortfeasor imperfection by a responsible human agent, in the discharge of a legal duty, as immediately produces, in an ordinary and natural sequence, a damage to another.

COMPLAINT                                   - 24 -

96.    Citibank's care of duty to Plaintiff was negligent, knowing and/or willful, as substantiated by the pertinent foregoing tort claims.

97.    Plaintiff has been harmed by the acts of Citibank, as were and are performed for HDCS [on behalf of their partnered agent, Home Depot], and with negligence to care of duty.

98.    Plaintiff's Complaint seeks injunctive and declaratory relief, as well as monetary damages, as they pertain to Citibank's negligent care of duty.

99.    Pursuant to the well-defined questions of fact and law raised herein with respect to tort Negligent Care of Duty, the burden is so on Citibank to otherwise clearly demonstrate all of Plaintiff's foregoing allegations against them in any part, or as wholly untrue. Such well-defined questions of fact and law include but are not limited to, the following:

a.    Whether Citibank has fully exercised reasonable care of duty in the administration of Plaintiff's Home Depot consumer credit card account and all related activity, from account inception through closure and to present-day; and

b.    Whether Citibank has diligently taken to account any foreseeable harm to Plaintiff in the course of all events relevant to her claim(s).

100.  Fair and efficient adjudication of this controversy as well as equitable injunctive relief is essential to compel Citibank to fully exercise a reasonable care of duty in the administration of Home Depot consumer credit card accounts, while taking to account any foreseeable harm to consumers in the future.

INTERFERENCE - LOSS OF OPPORTUNITY: Matters of Fact

101.  At all times relevant to the foregoing matters of controversy, Plaintiff has been self-employed as a sole proprietor and independent contractor, operating [her] business out of a home-based office in Tucson, Arizona.

102.  Plaintiff relies strictly upon telecommuting in the course of regular, daily business. Thus, telecommunications equipment is absolutely essential to her business operations, and it is likewise critical that this equipment is always in peak functioning condition. Any disruption to efficiency of operation is prohibitive, and therefore costly.  The equipment is

COMPLAINT                                          - 25 -

1   also critically necessary for Plaintiff's focused use; for standard business communications

2   with existing clients and third-party vendors, to facilitate and expedite her services, to

3   promote her business, and to remain available and ready to initiate new projects toward

4   maintaining a steady, viable income.

5       103. Plaintiff's cellular/wireless phone is primary among her business telecom

6   equipment; it is her only cellular/wireless phone, for her sole use as a sole proprietor and

7   independent contractor. It is also a personal device, and the associated phone number is

8   Plaintiff's only active phone number of record.

9       104. As a sole proprietor and independent contractor, Plaintiff's time is her most

10   valuable working asset in addition to her industry-specific skills. Her time is valued

11   accordingly with industry standards; compensated either on an hourly ("billable hour") basis

12   with a minimum one-hour charge, or on a "flat fee" basis whereby total time is estimated by

13   proration. Additional fees may apply accordingly with broker and/or third-party-provided

14   product(s) and/or service charges.

15       105. Plaintiff's office location is home-based and the nature of her business is dictated

16   by strict deadlines. Thus, her days and hours of operation are generally flexible to include

17   all days and hours, within reasonable limitations. This is foremost with the goal to foster

18   maximum productivity, while tending to demands of time management and the multitasking

19   required by Plaintiff's solo effort. Her home and life in general, as a single homeowner, add

20   to that demand by default.

21       106. As a general rule, Plaintiff does not offer her phone number to retailers. Because

22   it is a shared business/personal phone, this is necessary toward maintaining her privacy,

23   avoiding unsolicited contact, and to keep the line open and unencumbered for critical

24   business communications as well as any personal or emergency matters.

25       107. Between late May, 2015 and mid-December, 2015, Plaintiff's cellular/wireless

26   phone logged over-200 automated robocalls initiated by Citibank. As previously stated

27

28   COMPLAINT                              - 26 -

1  herein, these repeated, harassing, automated robocalls were received at all hours of the day,

2  seven (7) days a week; clockwork at an approximate rate of one call per hour.

3      108. Given Plaintiff's established use of her cellular/wireless phone, the sheer number

4  and nuisance of Citibank's incessant robocalls compromised more than her private and public

5  safety. The calls posed significant disruptive distraction; compromising Plaintiff's business

6  availability and readiness. Attention normally directed to answering calls for imperative

7  business and personal reasons, directly or in response to voicemail messages, instead became

8  a significant sacrifice of viable "airtime," unrestricted use, and overall efficient business

9  telecommunications.

10      109. Moreover, Plaintiff's time and dedicated focus on income-producing activity

11  was thrown into unnecessary disarray. Critically essential time was diverted to managing

12  Citibank's hundreds of incoming robocalls. Plaintiff "answered" only the first few calls;

13  though met with "dead air," she hung up; as is her common practice with any unrecognized

14  number presumed to be from a telemarketer. Once the monotonous, interminable pattern of

15  robocalls presented, however, Plaintiff manually redirected the calls to voicemail, but more

16  often shut off her phone entirely. Nevertheless, the newly imposed routine expended more

17  valuable time and effort, and became a monotonous necessity; time and again connecting

18  with her voicemail account to mitigate mailbox overload.

19      110. Plaintiff likewise spent an inordinate number of typically billable hours

20  investigating, documenting, and challenging Citibank repeatedly in the effort to stop the calls.

21  She also sacrificed more valuable time dealing with HDCS/Citibank (and Equifax) regarding

22  the exhausting chain of the aforementioned duty-to-care issues. Because the FCRA credit

23  reporting abuse remains unresolved, Plaintiff likewise still expends valuable time normally

24  dedicated to critical business endeavors. This includes hours preparing this Complaint self-

25  represented, albeit devoted determinedly toward an equitable end.

26      111. Plaintiff suffers these various significant and ongoing losses on top of a solo, low-

27  income status, whereby the gratuitous liability forced her to terminate the HDCS account as

28  COMPLAINT           - 27 -

1   soon as was possible. However, the especially nominal discount-incentive that initiated her

2   indebtedness has proven so costly as to it render deceptive; eventually defeating its purpose

3   entirely. The effects of Citibank's "renegade" interference have simply been and remain

4   unreasonably prohibitive for Plaintiff to sustain.

5   INTERFERENCE - LOSS OF OPPORTUNITY: Matters of Law

6       112. The losses Plaintiff has suffered due to Citibank's extreme conduct are

7   fundamental matters of tort/common law. That such foreseeable losses endure to-date

8   is outrageous. During all times relevant to the matters at controversy in this Complaint,

9   Citibank's willfully pervasive interference has consistently and negatively impacted Plaintiff's

10   professional and contractual relations in the course of conducting her regular business; clearly

11   resulting in her sacrifice, and measurable lost opportunity. Plaintiff's duties to thrive, sustain

12   and grow her business have been significantly impeded, as Citibank's misconduct even

13   endures. The deprivation and/or forfeit of her rights has transcended equipment functionality

14   and communications compromise, to that of bankrupting her privacy, availability, readiness,

15   productivity, and ultimately the regular prospective benefits regularly at her avail.

16       113. Citibank's causal loss of opportunity to Plaintiff was negligent, knowing and/or

17   willful, as substantiated by the pertinent foregoing claims.

18       114. Plaintiff has been harmed by the acts of Citibank, as were and are performed for

19   HDCS [on behalf of their partnered agent, Home Depot], and causal to her loss of opportunity.

20       115. Plaintiff's Complaint seeks injunctive and declaratory relief, as well as monetary

21   damages, as they pertain to Citibank's causing her loss of opportunity.

22       116. Pursuant to the well-defined questions of fact and law raised herein with respect

23   to tort Loss of Opportunity, the burden is on Citibank to otherwise clearly demonstrate how

24   all of Plaintiff's foregoing allegations are in any part improbable, or wholly unlikely. Such

25   well-defined questions of fact and law include but are not limited to, the following:

26       a.   Whether Citibank's extreme conduct and actions could have caused Plaintiff

27           sacrifice and/or measurable lost opportunity; and

28   COMPLAINT                                    - 28 -

b.   Whether Citibank could have otherwise foreseen such losses and/or outcomes resulting from their actions.

117.  Fair and efficient adjudication of this controversy as well as equitable injunctive relief is essential to compel Citibank to prudently avoid causing such sacrifice and/or measurable tort Loss of Opportunity by taking to account any foreseeable harm to consumers in the future.

———

118.  There are remaining common and predominant questions of law and fact that apply to each and every matter of controversy complained of herein, and that affect all parties. Those common and predominant questions of law and fact include, but are not limited to, the following:

a.   Whether Citibank's violations and/or conduct was knowing and/or willful;

b.   Whether Citibank is liable for damages, and the amount of such damages for each count charged; and

c.   Whether Citibank should be enjoined from engaging in any and/or all such violations and/or conduct in the future.

119.  Citibank has repeatedly acted on grounds hereby making final injunctive relief and corresponding declaratory relief and damages wholly appropriate. Moreover, on information and belief, Plaintiff firmly alleges that all complaints and claims raised herein are imminently and/or substantially likely to continue in the future, if an injunction is not entered.

## ARBITRATION IS UNCONSCIONABLE and UNENFORCEABLE

120.  This Complaint presents and conveys considerable substantive evidence that any overriding credit card agreement is fundamentally unconscionable and invalid as a means to an equitable adjudication. By extension, the same holds true with any arbitration clause, and thus, that it is inappropriate to sever toward independent enforcement.

COMPLAINT                                    - 29 -

121. To her best knowledge, Plaintiff never received any document, nor does she possess any authentic document from HDCS and/or Citibank resembling a consumer credit card agreement.

122. To her best knowledge, Plaintiff likewise never received any document, nor does she possess any authentic document from HDCS and/or Citibank containing an arbitration clause.

123. To her best knowledge, Plaintiff never signed any document containing an arbitration clause, at any time subsequent to account-opening, through closure, and/or to present-day.

124. Given these facts, Plaintiff cannot be said to have any 'actual knowledge' constituting assent to agreement to any specific terms, other than those limitedly severed by way of extraneous documents such as billing statements. Otherwise, Plaintiff is only vaguely aware of inconspicuous verbiage that has, at best, eluded to an agreement; yet no such verbiage even inconspicuously put her on notice of where to find a writing. As such, Plaintiff also lacked 'constructive knowledge,' particularly of any agreement to arbitrate any disputes.

125. Without her actual or constructive knowledge, any generic agreement exemplar purporting to extraneously bind Plaintiff simply by its existence is thus decisively deficient of assent to agreement. In *Nghiem v. Dick's Sporting Goods, Inc.* (Case No. 8:16-cv-00097, United States District Court, Central District of California), arbitration was denied specifically based on this core legal reasoning.

126. As it is, "boilerplate" credit card agreements such as might exist relevant to Citibank's defense, are contracts of adhesion by their very "take-it-or-leave-it" nature.[21] Any such sight-unseen contract between Citibank and Plaintiff is fundamentally unconscionable by virtue of Citibank's greater advantage over her inability to accept or reject terms unknown,

---

[21] *West's Encyclopedia of American Law,* edition 2. S.v. "adhesion contract."
Retrieved from http://legal-dictionary.thefreedictionary.com.

COMPLAINT                                         - 30 -

1   whereby a pressured and ultimately uninformed position is not an equitable means to mutual

2   agreement. Thus, courts often and understandably refuse to enforce contracts of adhesion on

3   such grounds that mutuality, or a "meeting of the minds," never truly existed, and that the

4   weaker party has not accepted the terms of the contract.

5       127. Nevertheless, any such generic agreement even supposed to exist between

6   Plaintiff and Citibank is precluded from enforcement as a matter of law, pursuant to key

7   factors, including but not limited to:

8       a.   Citibank's noncompliance with Regulation Z of the Truth in Lending Act

9            (hereinafter "TILA"),[22] which requires full, clear and conspicuous disclosure of

10           all agreement terms and all amendments thereto, in writing and in a form that

11           the consumer may keep;

12      b.   Citibank's failure of condition precedent, or that the requisite event (i.e. provision

13           of a full writing) must occur before any contractual duty exists;[23] *see In Re*

14           *Discover Bank v. Crysone C. Lindwall, A13-1344 (Minn. 2014)* (ruling that if it

15           cannot otherwise be established that a card agreement was sent or provided to the

16           account holder that would grant and thus give rise to use and acceptance of a

17           credit card, a reasonable fact-finder could not conclude that a contract was

18           formed, and thus cannot find them liable under the terms of the Agreement); and

19      d.   Citibank's waiver of right to enforce and/or compel in its defense any such

20           agreement per ¶ 127 (a, b) above, including any preexisting arbitration clause.

21      128. The Arizona Statute of Frauds A.R.S. §44-101 and 12 CFR 226.5(a)(1)(ii) classify

22   credit card agreements in a category of contracts required to be in writing. Key among the

23   requisite elements to such contracts, subsequent to an offer, is the act of acceptance by the

24   offeree, by use.  Given the fact that Plaintiff never used the permanent Home Depot consumer

25

26   [22] TILA Regulation Z, 12 CFR § 226.5.

27   [23] Restatement (Second) of Contracts § 224.

28   COMPLAINT                           - 31 -

credit card that Citibank issued, the absence of said requisite contractual element of Plaintiff's acceptance by use thus nullifies any assent to mutual agreement.

129. Common law doctrine defines that acceptance must be unequivocal and unconditional, and manifested according to the full terms of the offer. Likewise, the determination of a valid acceptance is governed by whether a promise or an act by the offeree was the bargained-for response.[24] By discontinuing any use of the account soon after the originating event and only making payments on the originating balance with the goal to close the account as soon as possible, Plaintiff ultimately did not agree to any overriding terms pertaining to open-ended use; substantially unlikely to be Citibank's bargained-for response.

130. The parties requirement to mutually assent to the proposed objectives and terms of a contract in order for it to be enforceable likewise considers the manifestation of the common intent of the parties being discerned from their conduct or verbal exchanges.[25] While Plaintiff's conduct of non-use and thereby non-acceptance has been established, she also notified Citibank in writing that, under the circumstances, she did not intend to use the consumer credit card it had issued.

131. On Plaintiff's belief, Citibank has imposed a boilerplate, take-it-or-leave-it arbitration clause consistent with typical credit card agreements described herein as adhesive in nature. Likewise, while denied any opportunity to strike an arbitration clause so broad in scope as is often covertly forced upon otherwise unknowing or uneducated consumers, Plaintiff maintains that arbitration is fundamentally unconscionable in relationship with any such decisively unenforceable contract.

132. Similarly, any otherwise unknown restrictions and/or scope of remedial limitations integrated into a purported arbitration clause are substantially likely to be

---

[24] *West's Encyclopedia of American Law,* edition 2. S.v. "Parole evidence/Elements of a Contract." Retrieved from http://legal-dictionary.thefreedictionary.com
[25] *West's Encyclopedia of American Law,* edition 2. S.v. "Parole evidence/Reality of Consent." Retrieved from http://legal-dictionary.thefreedictionary.com

COMPLAINT                                             - 32 -

1   unconscionable by default. Those may include but are not limited to: little choice of

2   (potentially for-profit) arbitration firms; inconspicuous arbitration rules not spelled-out in

3   their entirety; restricted discovery; undetermined statute-of-limitations periods; unknown

4   costs and fee shifting; diminished statutory relief and/or remedies; lesser-ranked officials

5   following inappropriately simplified procedure comparative to the courts; and questionable

6   authority to decide such issues as the existence, scope or validity of an arbitration agreement.

7         133. A greater restrictive example specific to this Complaint that renders any

8   purported arbitration clause unenforceable pertains to the TCPA claims at issue here. By its

9   express terms, any arbitration clause within an adhesion agreement that Citibank may seek

10   to enforce is limited to claims that relate to a Citibank account. Use of a consumer's phone

11   number in a manner that violates the TCPA does not relate to the consumer's account. *See*

12   In Re *Jiffy Lube Int'l, Inc.*,—F. Supp. 2d—Case No. 11-md-2261-JM-JMA, 2012 U.S. Dist.

13   LEXIS 31926, at *27-28 (S.D. Cal. Mar. 8, 2012) (refusing to compel arbitration of TCPA

14   claim where an "incredibly broad" arbitration clause encompassed "any and all disputes,

15   controversies or claims (including breach of warranty, contract, tort or any other claim)").

16   Any arbitration clause is, therefore, already separate and independent of Plaintiff's TCPA

17   claims here; while she never agreed to arbitrate any claims with Citibank, claims with respect

18   to the TCPA violation(s) simply do not apply or belong in an arbitration forum.

19         134. Similarly, with respect to any terms or remedial restrictions potentially posed by

20   any arbitration clause with questionable authority over a broad classification of disputes,

21   several instances in circuit courts have shown they have invalidated entire arbitration

22   agreements over statutory claims. The Ninth Circuit once concluded that the entire arbitration

23   clause must be eliminated, as it clearly purported to achieve through arbitration what

24   Congress has expressly forbidden; *see In Re Graham Oil Co. v. Arco Products*, supra note 18,

25   at 1246 (concluding that any severance is inappropriate when the entire clause represents an

26   integrated scheme to contravene public policy).

27

28

135. Congress likewise intended to preclude a waiver of judicial remedies. In *Paladino v. Avnet Computer Technologies, Inc.* (supra note 18, at 1062), the 11th Circuit explained that '...the damages and equitable relief a court could award, and "the arbitrability of [statutory] claims rests on the assumption that the arbitration clause permits relief equivalent to court remedies."'

136. Plaintiff further holds that an otherwise mandatory tribunal removed from the courts, as with mandatory barring of class-action claims, is also inferred as not in the best interest of such public policy, or lawmaker's intent. A court's civic duty to adjudicate damages and equitable remedies, particularly those that carry substantial punitive and/or damage claims, is inevitably a matter of accountability deservedly subject to public record and review; constructive knowledge that consumers and litigants alike are entitled to benefit from. Wherein a complaint presents serious matters that are inherently subject to statutory review and/or the rule of law, a private tribunal shields a defendant not only from public exposure of wrongdoing, but the full justice behind prohibitions and remedies that only lawmakers and an appointed judiciary are empowered to assign and adjudicate.

137. It likewise stands to reason that all contracts and/or arbitration terms are inherently biased toward protecting the maker. However, boilerplate credit card agreements and arbitration clauses are quintessentially so; broadly insulating a defendant with boundless enforcement of dispute matters, and even open-ended time to so enforce. In the case of this Defendant, however, one uniquely-known reason to question bias and related unconscionability and/or unenforceability claims within an arbitrary forum, lies in the fact that Citibank had previously selected and relied significantly upon an arbitration firm, the National Arbitration Forum ("NAF"), that is no longer in operation and was effectively shut down for corruption.

138. Traditional defenses to contract such as unconscionability can also be used to invalidate an arbitration agreement without running afoul of the Federal Arbitration Act ("FAA"). According to the Court, this is because the FAA "puts arbitration agreements on

1    the same footing as other contracts" (*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*,

2    379 F.3d 159 (5th Cir. 2004) at 166).

3    139. In March of 2015, the Consumer Financial Protection Bureau provided Congress

4    with a comprehensive arbitration study, pursuant to Dodd–Frank Wall Street Reform and

5    Consumer Protection Act § 1028(a). The study offered empirical evidence that the use of

6    forced arbitration clauses is deceptive, and inevitably more harmful to consumers when

7    weighed against any benefits. The focus thus sought to expand on foundational CFPB and

8    Federal government provisions already prohibiting the practice among numerous categories

9    of consumer disputes. Consumer activists embraced the opportunity to speak out, targeting a

10   handful of financial institutions; Citigroup being primary among them. Dozens of national,

11   state and local consumer advocates and organizations also commended the study, and

12   formally urged the CFPB to continue legislative efforts or to prohibit the practice altogether,

13   in the public interest and in the interest of restoring consumers' right to choose how to resolve

14   disputes with financial institutions.[26]

15   140. The contract and arbitration enforcement matters addressed here must also

16   consider that any term(s) of governance Citibank may purport would raise the question

17   of the lawful right of other states to ignore mutuality of agreement, or lack thereof. This

18   further complicates matters of upholding agreements not executed in this state, and therefore

19   the appropriate choice of law. Events that led to the relationship at hand firmly establish such

20   choice, given their primary occurrence in this District and the resulting appropriation of

21   venue for adjudication of this Complaint.

---

[26] National Consumer Law Center, letter to CFPB from National, State and Local Signatories
(see https://www.nclc.org/images/pdf/arbitration/ltr_to_cfpb_arbitration_3242015.pdf)

## CAUSES OF ACTION

## FIRST COUNT

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227 *ET SEQ.* *and* 15 U.S.C. § 6102-TELEMARKETING RULES • 16 CFR PART 310

141. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully-stated herein.

142. The foregoing acts and omissions by Citibank constitute numerous and multiple knowing and/or willful violations of the TCPA and Federal Code of Regulations governing commercial telemarketing practices, including but not limited to each of the herein-cited provisions of 47 U.S.C. § 227 *et seq.*, and 15 U.S.C. § 6102, 16 CFR § 310.4.

143. As a result of Citibank's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled to treble damages of up to $1,500.00 for each and every call in violation of the TCPA statute, pursuant to 47 U.S.C. § 227(b)(3)(C) and/or § 227(c)(5)(C).

144. As a result of Citibank's knowing and/or willful violations of 15 U.S.C. § 6102, 16 CFR § 310.4, Plaintiff is entitled to bring a civil action to enjoin such conduct, to enforce compliance with any rule of the FTC under section 6102 of the title, to obtain damages, or to obtain such further and other relief as the court may deem appropriate, pursuant to 15 U.S.C. § 6104.

145. Plaintiff is also entitled to and does seek injunctive relief prohibiting such conduct violating the TCPA, and Federal Code of Regulations governing commercial telemarketing practices by Citibank in the future.

146. Plaintiff is also entitled to an award of any costs associated with the adjudication of her Complaint.

## SECOND COUNT

### NEGLIGENT VIOLATIONS OF THE
### TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227 *ET SEQ.*
### *and* 15 U.S.C. § 6102-TELEMARKETING RULES • 16 CFR PART 310

147. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully-stated herein.

148. The foregoing acts and omissions by Citibank constitute numerous and multiple negligent violations of the TCPA and Federal Code of Regulations governing commercial telemarketing practices, including but not limited to each of the herein-cited provisions of 47 U.S.C. § 227 *et seq.*, and 15 U.S.C. § 6102, 16 CFR § 310.4.

149. As a result of Citibank's negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled to an award of up to $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B) and/or § 227(c)(5)(B).

150. As a result of Citibank's negligent violations of 15 U.S.C. § 6102, 16 CFR § 310.4, Plaintiff is entitled to bring a civil action to enjoin such conduct, to enforce compliance with any rule of the FTC under section 6102 of the title, to obtain damages, or to obtain such further and other relief as the court may deem appropriate, pursuant to 15 U.S.C. § 6104.

151. Plaintiff is also entitled to and does seek injunctive relief prohibiting such conduct violating the TCPA and Federal Code of Regulations governing commercial telemarketing practices by Citibank in the future.

152. Plaintiff is also entitled to an award of any costs associated with the adjudication of her Complaint.

## THIRD COUNT

### KNOWING AND/OR WILLFUL NONCOMPLIANCE WITH THE
### FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681 *ET SEQ.*

153. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully-stated herein.

COMPLAINT                                    - 37 -

154. The foregoing acts and omissions by Citibank constitute multiple instances of willful noncompliance with the FCRA, including but not limited to each of the herein-cited provisions of 15 U.S.C. § 1681 *et seq.*

155. As a result of Citibank's willful failure to comply with requirements set forth under 15 U.S.C. § 1681 *et seq.*, Plaintiff is entitled to an award, taking to account each and every instance of noncompliance in violation of the statute, in an amount equal to the sum of:

    a.    any actual damages sustained as a result of the failure(s), or damages of not less than $100.00 and not more than $1,000.00, pursuant to U.S.C. § 1681n, § 616(a)(1)(a); and

    b.    any such amount of punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n, § 616(a)(2).

156. Plaintiff is also entitled to and does seek injunctive relief prohibiting such noncompliance with the FCRA by Citibank in the future.

157. Plaintiff is also entitled to an award of any costs associated with the adjudication of her Complaint.

158. Plaintiff is also entitled to appropriate and permanent corrective actions as they apply to the inaccurate information furnished by Citibank and reported by Equifax as part of her consumer credit report(s), such that accuracy is achieved as a matter of law.

### FOURTH COUNT

### NEGLIGENT NONCOMPLIANCE WITH THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681 *ET SEQ.*

159. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully-stated herein.

160. The foregoing acts and omissions by Citibank constitute multiple instances of negligent noncompliance with the FCRA, including but not limited to each of the herein-cited provisions of 15 U.S.C. § 1681 *et seq.*

COMPLAINT            - 38 -

161. As a result of Citibank's negligent failure to comply with requirements set forth under 15 U.S.C. §1681 *et seq.*, Plaintiff is entitled to an award, taking to account each and every instance of noncompliance in violation of the statute, for any actual damages sustained as a result of the failure(s), pursuant to 15 U.S.C. §1681o, §617(a)(1).

162. Plaintiff is also entitled to and does seek injunctive relief prohibiting such noncompliance with the FCRA by Citibank in the future.

163. Plaintiff is also entitled to an award of any costs associated with the adjudication of her Complaint.

164. Plaintiff is also entitled to appropriate and permanent corrective actions as they apply to the inaccurate information furnished by Citibank and reported by Equifax as part of her consumer credit report(s), such that accuracy is achieved as a matter of law.

## FIFTH COUNT

## NEGLIGENT CARE OF DUTY

165. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully-stated herein.

166. The foregoing acts and omissions by Citibank constitute Negligent Care of Duty, including but not limited to the herein-cited doctrine of The American Restatement of the Law-Second-Torts.

167. As a result of Citibank's negligence to care of duty, Plaintiff is entitled to an award of punitive damages to deter similar acts in the future, in any such amount as the court may allow, subject to applicable disclosure and/or evidentiary requirements.

168. Plaintiff is also entitled to and does seek injunctive relief prohibiting such negligence to duty of care by Citibank in the future.

169. Plaintiff is also entitled to an award of any costs associated with the adjudication of her Complaint.

COMPLAINT                                    - 39 -

## SIXTH COUNT

## LOSS OF OPPORTUNITY

170. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully-stated herein.

171. The foregoing acts and omissions by Citibank constitute Loss of Opportunity, including but not limited to the herein-cited doctrine of The American Restatement of the Law-Second-Torts.

172. As a result of Citibank's tortious interference and causal loss of opportunity, Plaintiff is entitled to an award of actual, compensatory and punitive damages to indemnify her and to deter similar acts in the future, in an amount equal to the sum of:

    a.    any actual plus compensatory damages as a result of losses suffered, or damages of not less than less than $2,500.00 and not more than $3,500.00 (subject to applicable disclosure and/or evidentiary requirements); and

    b.    any such amount of punitive damages as the court may allow.

173. Plaintiff is also entitled to and does seek injunctive relief prohibiting such tortious interference and causal loss of opportunity by Citibank in the future.

174. Plaintiff is also entitled to an award of any costs associated with the adjudication of her Complaint.

## PRAYER FOR RELIEF

175. WHEREFORE, Plaintiff respectfully requests that the Court grant her the following relief against Defendant:

    A.    Injunctive relief prohibiting such violations of the TCPA and Federal Code of Regulations governing commercial telemarketing practices in the future;

    B.    As a result of Citibank's willful and/or knowing violations of 47 U.S.C. §227(b)(1) and/or §227(c)(3)(F), Plaintiff seeks treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA;

1   C.   As a result of Citibank's negligent violations of 47 U.S.C. §227(b)(1) and/or

2        §227(c)(3)(F), Plaintiff seeks $500.00 in statutory damages for each and every

3        call that violated the TCPA;

4   D.   As a result of Citibank's violations of 15 U.S.C. § 6102, 16 CFR § 310.4, Plaintiff

5        seeks to enjoin such conduct, to enforce compliance with any rule of the FTC

6        under section 6102 of the title, to obtain damages, or to obtain such further and

7        other relief as the court may deem appropriate;

8   E.   Injunctive relief prohibiting such violations of the FCRA in the future;

9   F.   As a result of Citibank's willful noncompliance with various requirements

10       set forth under 15 U.S.C.§ 1681s-2 § 623 (and potentially 15 U.S.C. §1681b

11       §604 (c)(2)(A)), Plaintiff seeks any actual damages sustained, or damages of not

12       less than $100.00 and not more than $1,000.00, plus any such amount of punitive

13       damages as the court may allow, for any violations of the FCRA;

14  G.   As a result of Citibank's negligent noncompliance with various requirements

15       set forth under 15 U.S.C.§ 1681s-2 § 623 (and potentially 15 U.S.C. §1681b

16       §604(c)(2)(A)), Plaintiff seeks any actual damages sustained, for any violations

17       of the FCRA;

18  H.   Injunctive relief prohibiting Negligent Duty of Care injuries in the future;

19  I.   As a result of Citibank's negligence to duty of care, Plaintiff seeks punitive

20       damages to deter similar acts in the future, in any such amount as the court may

21       allow, for failure to adhere to the rule of law regarding use of her telephone

22       number and fair credit reporting procedure, failure to exercise a reasonable

23       standard of care in the administration of her HDCS account, and for failing to

24       take account of all foreseeable harm;

25  J.   Injunctive relief prohibiting Tortious Interference and Loss of Opportunity

26       injuries in the future;

27

28  COMPLAINT                              - 41 -

K.    As a result of Citibank's tortious interference with her business communications, contractual relations, opportunities and income, Plaintiff seeks actual and compensatory damages of not less than $2,500.00 and not more than $3,500.00, plus punitive damages as the court may allow, for harm suffered as loss of opportunity and for failure to take account of such foreseeable harm;

L.    An award of any costs associated with the adjudication of her Complaint in its entirety; and

M.    Such other relief as the Court deems just and proper.

### ADDITIONAL DEMANDS

176. Pursuant to 15 U.S.C. § 1681s-2 § 623(a)(2)(4), Plaintiff demands permanent correction(s) be made to her Equifax and all consumer credit reports that accurately reflect her account closure status with HDCS/Citibank.

177. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated March 30, 2017                    Respectfully Submitted,

By: _____

Judith M. Ockenfels, ProSe
PO Box 43183
Tucson, AZ 85733-3183
Phone: (520) 203-1745

---

Pursuant to 15 U.S.C. § 6104(b) and 16 CFR § 310.7(a), Plaintiff shall serve notice immediately upon instituting this action to: The Office of the Director, Bureau of Consumer Protection, Federal Trade Commission, Washington, DC 20580. Said notice shall include a copy of Plaintiff's Complaint and any other pleadings to be filed with the court. By authority, the Commission shall have the right (A) to intervene in the action, (B) upon so intervening, to be heard on all matters arising therein, and (C) to file petitions for appeal.

COMPLAINT                              - 42 -